STATE *vs*. CHARLES F. SWETT, and another, appellants.

Cumberland.    Opinion January 5, 1895.

*State and Game.    Lobsters.    Common Carrier.    Stat. 1889, c. 292, § 2.*

A common carrier who in the course of his business has short lobsters, which were packed in barrels, in his possession for the purpose of transporting them to market, without knowing or having reasonable cause for believing that they are short lobsters, is not liable to the penalty ordinarily attaching to the having possession of short lobsters; and no duty rests on him, not having such knowledge or reasonable belief, to inspect or examine such packages in order to see whether they contain short lobsters or not.

*Bennett* v. *American Express Co*. 83 Maine, 236, approved.

ON EXCEPTIONS.

This was a complaint against the respondents for the violation of section 2 of chapter 292 of the laws of 1889, by having in their possession short lobsters.

The case was tried to a jury in the Superior Court, for Cumberland county, on appeal from the Municipal Court for the city of Portland.    The lobsters were seized by a fish warden, Cushman, without a warrant.

The jury found the respondent, Swett, guilty in manner and form as charged against him in the complaint and found the number of short lobsters in his possession as alleged in the complaint, to be nineteen hundred and twenty-four.

The respondent, Charles F. Swett, was the manager of "Swett's Express" doing business between the cities of Portland, Maine, and Boston, Massachusetts, and the other respondent, Christopher W. Leonard was one of the drivers of the express wagons in Portland.

(Complaint.)

Cumberland, ss.

To the Judge of our Municipal Court for the City of Portland in the County of Cumberland.

George E. Cushman on the twenty-sixth day of February in the year of our Lord one thousand eight hundred and ninety-two in behalf of said state, on oath complains, that Charles F. Swett and Christopher W. Leonard of Portland in said county, on the twenty-fifth day of February, A. D., 1892, at said Portland, between the first day of July in the year 1891 and the first day of May, A. D., 1892, to wit : on said twenty-fifth day of February unlawfully did have in their possession nineteen hundred twenty-four lobsters, each of said lobsters then and there being less than ten and one-half inches in length, said length of each of said lobsters being then and there measured by extending each lobster on the back its natural length, and taking the length of its back measured from the bone of the nose to the end of the bone of the middle flipper of the tail, which said lobsters when caught being shorter than ten and one-half inches in length measured in manner aforesaid, were not then and there liberated alive at their risk and costs, against the peace of said state, and contrary to the form of the statute in such case made and provided.

George E. Cushman.

The counsel for the defendant requested the court to instruct the jury as follows :

That lobsters are a legitimate subject of trade and commerce, and that a common carrier has a right to carry them from place to place and from state to state, under the regulations of commerce.

That the defendant Swett being a common carrier, had a right to the possession of lobsters for the purpose of carriage under the regulations of commerce ; and that, if he had no reason to suppose they were lobsters less than ten and one-half inches in length, he had a right to carry them in the ordinary course of his business as a common carrier without inspection.

That when Cushman undertook, without legal process, to inspect and break into the barrel, or to take the property, he

became a mere trespasser; and the defendants, under the rule of common law would have been liable to the shippers if they had allowed the officers to take away the lobsters or to break into the barrels.

That the defendant Swett as a common carrier would have been liable to the shippers for any damage which he should do by breaking into the barrels within his possession for carriage.

That if the jury shall find that the defendant Swett had reason to suppose that the barrels contained lobsters, that even then the duty is not imposed upon him to examine and go through every package to find out whether there are lobsters in it less than ten and a half inches long.

That if the jury find that certain of the barrels of lobsters had been placed in the car, they had passed beyond defendant's control and custody and had gone out of his possession and were not for the purposes of this statute within the possession of the defendant.

That if they find that these barrels had been delivered at the freight station of the Boston & Maine Railroad, it is for them to find as a question of fact whether they had not passed from his custody into the custody of the Boston & Maine Railroad.

That if the jury find that the lobsters testified to in this case, had come into the possession of the defendant Swett as a common carrier for carriage from this state to another, then those lobsters were, within the intention of the law, started in transit and were liable to the rules of interstate commerce.

That if they find the lobsters testified to in this case, or any of them, had been committed to the defendant as a common carrier, they were an article of trade, and if they were intended to be carried from this state to another, then they were an article of trade and that commerce in them between the states had already commenced.

That so long as Congress has not passed any law to regulate the commerce in lobsters, or allowing the State of Maine to do so, it thereby indicates its will that such commerce shall be free and untrammelled.

That under the Constitution of the United States and of this

State and under the regulations of the act known as the Interstate Act, the provisions of the act of chapter 292 of the Public Laws of 1889 of the State of Maine are void, so far as they interfere with the duties of a common carrier in the carriage of goods from state to state.

That unless the jury shall find beyond a reasonable doubt from the whole testimony in the case, that these respondents knowingly and intentionally had in their possession lobsters less than ten and one-half inches long, they must return a verdict of not guilty.

That unless they shall find beyond a reasonable doubt from the whole testimony in the case that the defendants held the lobsters in their possession for other purposes than that of the ordinary purposes of transportation as a common carrier, they must return a verdict of not guilty.

The court refused to give these instructions in terms, but did instruct the jury as follows :

"These respondents are charged with having in their possession on the twenth-fifth of February last, 1924 lobsters, which measured less than ten and one-half inches in length, measured according to this statute. In other words, the respondents are charged with violating section 2 of chapter 292 of the Laws of 1889, which I will read : 'It is unlawful to catch, buy or sell, or expose for sale, or possess for any purposes, between the first day of July and the first day of the following May, any lobster less than ten and one-half inches in length, alive or dead, cooked or uncooked, measured in manner as follows ; taking the length of the back of the lobster, measured from the bone of the nose to the end of the bone of the middle flipper of the tail, the length to be taken with the lobster extended on the back its natural length ; and any lobsters shorter than the prescribed length when caught, shall be liberated alive at the risk and cost of the parties taking them, under a penalty of one dollar for each lobster so caught, bought, sold, exposed for sale, or in possession, not so liberated.'

"That is the statute, the violation of which these respondents

are charged. It seems from the testimony that the respondent Swett is a part proprietor and the manager of an Express line between this city and the city of Boston, and that the respondent Leonard drives one of his teams. That the respondent Swett is a common carrier and certain duties and obligations therefore rest upon him as a common carrier under the law. A common carrier is obliged to receive all goods with the exception of such as are contraband, offered to it for transportation from place to place. It appears that on the twenty-fifth day of last February the respondent Swett through his driver, Leonard, took into one of his teams twelve barrels delivered to it on Commercial wharf in this city. There is no question but that these barrels contained lobsters. These barrels of lobsters were then in one sense in the possession of both of these defendants. But bare possession, mere naked passive possession is not sufficient under this statute. The possessor must know in a legal sense that the contraband goods were in his possession or else he would not be guilty of violating this law. Now, while these respondents admit that constructively, in a certain sense, these barrels of lobsters were in their possession, still they deny that in a legal sense that they were in their possession; that is, that they had such a possession as would render them guilty of violating this statute. It is true, as claimed by the attorney for the respondent, that if a package is offered to a common carrier for transportation he is not compelled by law to break open the package for the purpose of ascertaining whether or not it contains contraband goods. A law requiring such strictness of examination would be an interference with the rights of shippers that would not be tolerated. If these respondents did not know that the barrels entrusted to them contained lobsters of some length, that is, if they were not aware that the barrels contained lobsters at all, even though they were constructively in their possession, then they cannot be found guilty. But while a common carrier is obliged to receive all goods offered him for transportation, he is not obliged to receive into his possession such goods as the law forbids him to receive into his possession. He is not obliged to receive short lobsters for

transportation because the law prohibits the possession of them for any purpose. But, gentlemen, I will go a little further, and I instruct you that if a common carrier receives into his possession for transportation or otherwise, lobsters, that is, if he receives barrels which he knows contain lobsters, then he is bound in law to know whether those lobsters are longer or shorter than ten and one-half inches, measured according to the statute ; and if any such lobsters as matter of fact are less than ten and one-half inches in length, then short lobsters are in his possession within the meaning of the law and he would be guilty of violating this statute.

"Now you apply these principles of law to the testimony in this case, taking up each one of these respondents. If the respondent, Swett, knew when he sent his team to Commercial wharf that it was to receive twelve barrels of lobsters, and as matter of fact it did receive twelve barrels of lobsters, then he was bound to know whether those lobsters were shorter than prescribed by the statute which I have read ; he is bound to know it in law, and if any of those lobsters were less than ten and one-half inches in length, measured according to the statute, they were in his possession and you would be justified in finding a verdict against him. But if you have a reasonable doubt as to any of these facts he is entitled to the benefit of it and must be acquitted."

To the foregoing instructions and refusals to instruct the respondent excepted.

*Frank W. Robinson*, County Attorney, for State.

A legal seizure was not necessary in order to give the court jurisdiction of proceedings against the respondent, however it might have been had proceedings been instituted upon the seizure to obtain a forfeiture of the lobsters. This case is not analogous to *Guptill* v. *Richardson*, 62 Maine, 257, 265, but falls within the principle applied in *Com.* v. *Dana*, 2 Met. 329.

Whether or not the law under discussion is constitutional as affecting lobsters brought into this state by a common carrier does not arise upon the facts in the present case. The statute

may be constitutional as applied to one state of facts, and unconstitutional as to others. *Tiernan* v. *Rinker*, 102 U. S. 123, 126 ; *Leisy* v. *Hardin*, 135 U. S. 100 ; *In re Rahrer*, 140 U. S. 562-4 ; *Hall* v. *De Cuir*, 95 U. S. 485.

A state has the authority to regulate the fisheries within its territorial tide-waters. *McCready* v. *Virginia*, 94 U. S. 391, 394 ; *Com.* v. *Manchester*, 152 Mass. 230, 242 ; *Massachusetts* v. *Manchester*, 139 U. S. 240, 262 ; *Corfield* v. *Coryell*, 4 Wash. C. C. 371 ; *Kidd* v. *Pearson*, 128 U. S. 21, 22 ; *Smith* v. *Maryland*, 18 How. 71, 74. *Dunham* v. *Lamphere*, 3 Gray, 268 ; *Moulton* v. *Libby*, 37 Maine, 472, 494 : *Phelps* v. *Racey*, 60 N. Y. 10.

As an incident to the right to regulate its fisheries, a state has the power to adopt enactments to prevent the unseasonable taking of fish, including shell-fish, and to render such legislation effective by suitable penalties. *Corfield* v. *Coryell*, 4 Wash. C. C. 380 ; *Smith* v. *Maryland*, 18 How. 74 ; *Gibbons* v. *Ogden*, 9 Wheat. 203, 204 ; *Patterson* v. *Kentucky*, 97 U. S. 504.

The intent of the statute under consideration is to protect lobsters and prevent their unreasonable destruction. *Smith* v. *Craig*, 80 Maine, 88.

Legislation of the character mentioned is not in conflict with the interstate commerce provision of the Federal Constitution. *Corfield* v. *Coryell*, 4 Wash. C. C. 380 ; *Munn* v. *Illinois*, 94 U. S. 113 ; *R. R. Co.* v. *Husen*, 95 U. S. 471 ; *Bowman* v. *Railroad Company*, 125 U. S. 489, 490 ; *Nathan* v. *Louisiana*, 8 How. 80, 81. "It is no objection to the existence of distinct substantive powers, that, in their application, they bear upon the same subject." *Gibbons* v. *Ogden*, 9 Wheat. 235. "Legislation in a great variety of ways may affect commerce and persons engaged in it, without constituting a regulation of it, within the meaning of the Constitution." *Sherlock* v. *Alling*, 93 U. S. 99, 103, 104 ; *Kidd* v. *Pearson*, 128 U. S. 23 ; *Railroad* v. *Husen*, 95 U. S. 472 ; *Munn* v. *Illinois*, 94 U. S. 135 ; *Gross Railway Receipts Tax*, 15 Wall. 293.

Lobsters do not become articles of trade or commerce until lawfully removed under the regulations of the state. *Corfield* v. *Coryell*, 4 Wash. C. C. 371, 380; *Turner* v. *Maryland*, 107 U. S. 58; *Kidd* v. *Pearson*, 128 U. S. 18. They do not become property in the hands of any person unless possession is lawfully obtained. *James* v. *Wood*, 82 Maine, 177; *Blades* v. *Higgs*, 11 H. L. 631; *Amer. Ex. Co.* v. *People, infra.*

The state owns the tide-waters and the fish in them, so far as they are capable of ownership while running. *McCready* v. *Virginia*, 94 U. S. 391, 394; *Manchester* v. *Massachusetts*, 139 U. S. 260, 261; *Martin* v. *Waddell*, 10 Pet. 410; *Moulton* v. *Libby*, 37 Maine, 472, 485, 487.

So far then as short lobsters are concerned, the statute does not interfere with commerce in the constitutional sense of regulating it, because such lobsters are not property — the shipper is not the owner of them.

It is contended that it was the duty of the common carrier as such to accept and carry the barrels of lobsters; that he was neither authorized nor permitted to inspect them if in his possession; that he could not insist upon knowledge of contents as a condition to acceptance for carriage; and hence that he was placed in the dilemma of being compelled by law to act, and then punishable by law for having acted.

Under the instructions given, the carrier is not prevented from carrying lawful lobsters. Nor is he compelled to open packages in his possession to learn their contents. The court did not instruct the jury that if, after receiving packages, the carrier discovers that they contain lobsters, he is bound to know whether they are of illegal length.

It is evidently true, as a general rule, that express carriers are not bound to know or authorized to find out, as a condition of receiving it, what a package contains that is offered to them for carriage. *The Nitro-Glycerine Case*, 15 Wall. 536; *State* v. *Goss*, 59 Vt. 272. But these cases do not hold that under no circumstances may a carrier insist upon such knowledge as a condition of carriage. And no case has been found that does so hold.

The Nitro-Glycerine case is one where the question at issue was that of negligence, and did not involve, as does the present case, the validity of a statute which, as here contended, dispenses with the element of *scienter*. The case of *State* v. *Goss* was not against a common carrier but its agent, and it was sought upon familiar principles to hold the respondent liable criminally in respect of a transaction in which he engaged as agent for the shipper of intoxicating liquor,— for participation in a misdemeanor. And it is admitted in the latter case that the law neither requires nor permits common carriers to do illegal acts ; that they are not bound to transport and deliver intoxicating liquor nor other commodities, if thereby they would commit an offense or incur a penalty (p. 271).

It is everywhere conceded that the carrier may refuse to receive packages offered without his being made acquainted with their contents, if there is good ground for believing that they contain anything of a dangerous character. It is admitted in the Nitro-Glycerine case, that such is the effect of the decision in *Crouch* v. *The London & Northwestern Railway*, 14 Com. Bench, 291. The latter case, it will be found upon examination, decides simply that the proposition that a carrier is, in all cases, entitled to know the nature of the goods contained in the packages offered him for carriage, is not law.

The obligation of a common carrier to receive and carry all goods offered is qualified by several conditions which he has a right to insist upon before receiving them, and one of the conditions is that the person offering is the owner or his authorized agent. *Fitch* v. *Newberry*, 1 Doug. (Michigan) 1 ;. S. C. 40 Amer. Decis. 1-38-43. He is not bound to receive goods from a wrong-doer. *Robinson* v. *Baker*, 5 Cush. 144.

The shipper of lobsters of less than the statutory limit of length is not the owner, and he is a wrong-doer.

In an action brought against a common carrier for refusing to receive and carry lobsters, would it not constitute a valid defense that the plaintiff was the unlawful possessor of them ? It is intimated that such would be a good defense, if he had stolen goods. See *Fitch* v. *Newberry*, *supra*, p. 38.

The question presented, therefore, is whether or not the statute, as construed at *nisi prius*, is a valid exercise of the legislative right to regulate the fisheries of the state, and applies to common carriers. If decided in the affirmative, it would seem to follow by necessary implication that the carrier may exact knowledge of the contents of packages offered for carriage, when he knows they contain lobsters, or else that he is bound at his peril to ascertain their contents in some other way.

The state may prohibit transportation by a common carrier of lobsters illegally taken, and, *a fortiorari*, the possession of such lobsters by a common carrier. In *Amer. Ex. Co.* v. *People*, the Supreme Court of Illinois says : "If the legislature of the state thought that a statute preventing a citizen from killing quail for sale in the market, and imposing a penalty on a common carrier for shipping or transportation for sale, would result in protecting the game in the state, we perceive no valid reason why a statute of that character might not be enacted." *Amer. Ex. Co.* v. *People*, 133 Ill. 649 ; S. C. Am. 23 State Rep. 641. Also reported in Cen. Law Jour. vol. 31, p. 271, with note and citation of cases.

*Bennett* v. *Am. Ex. Co.* 83 Maine, 236, is not an authority against the position of the government. In that case it was claimed by the defendant's counsel that under the statute (R. S., c. 30, § 12, quoted in opinion), they could not lawfully take any more deer, or parts thereof, into their possession for transportation before the following January. "But," says the court, "we cannot adopt such a construction of this statute as would make it apply to common carriers. Such construction as claimed by the defendants would make it unlawful for the carrier to transport, between the first days of October and January, the carcasses of moose, caribou, or deer, lawfully killed before the first day of October" (p. 239). "The transportation of the subject of interstate commerce, where it is such as may lawfully be purchased, sold or exchanged is, without doubt, a constituent of commerce itself, and is protected by and subject only to the regulation of Congress" (p. 242). The facts upon which that case was decided show that the plaintiff was the

lawful owner and possessor of the deer seized.    Comp. *Corfield v. Coryell*, 4 Wash. C. C. 380 ; *Kidd* v. *Pearson*, 128 U. S. 18 ; *Turner* v. *Maryland*, 107 U. S. 58.

*Scienter* on the part of the carrier is an essential of the offense under the Illinois law.    But the Maine statute is silent as to intent or knowledge.    The instructions to the jury as to *scienter* were in accordance with the manifest intention of the legislature.    It is the policy of the law to prohibit arbitrarily the possession of lobsters of less than the prescribed length without reference to the possessor's knowledge of their illegal character.    The language of the act is : "It is unlawful to . . . possess for any purposes."

It is competent for the legislature to make an act criminal regardless of the knowledge or motive of the doer of such act. And it is laid down by the authorities that this may be done by implication as well as by an express clause ; that the question is one of public policy, and this may be taken into consideration when the legislative meaning is sought.    *Whart. Cr. Law*, (9 ed.) vol. 1, § 88 ; *Halsted* v. *State*, 12 Vroom (41 N. J. L.), 552, 589, 592 ; *State* v. *Hopkins*, 56 Vt. 260.

*Clarence Hale*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, JJ.

PETERS, C. J.    One of the proprietors of Swett's Express Company and a cartman in the employment of the company were tried on a criminal complaint against them for having in their possession nineteen hundred and twenty-four lobsters of less than ten and a half inches in length.

The complaint was brought upon section 2 of chapter 292 of the laws of 1889, which section reads as follows :

"It is unlawful to catch, buy or sell or expose for sale, or possess for any purposes, between the first day of July and the first day of the following May, any lobster less than ten and one-half inches in length, alive or dead, cooked or uncooked, measured in manner as follows : taking the length of the back of the lobster, measured from the bone of the nose to the end of the

bone of the middle flipper of the tail, the length to be taken with the lobster extended on the back its natural length ; and any lobsters shorter than the prescribed length when caught, shall be liberated alive at the risk and cost of the parties taking them, under a penalty of one dollar for each lobster so caught, bought, sold, exposed for sale, or in possession, not so liberated."

There were twelve barrels of the lobsters packed in the customary manner for shipment to New York. There was evidence tending to show that the respondents knew that the barrels contained lobsters, but no evidence that they knew while the same were in their possession that they were short lobsters. The barrels had not been in their possession but a few moments before they were seized and carried away by a game and fish warden.

The counsel for the respondents asked for instructions appropriate to the positions of the defense, which were refused by the learned judge, who gave in their stead the following rulings :

"If these respondents did not know that the barrels entrusted to them contained lobsters of some length, that is, if they were not aware that the barrels contained lobsters at all, even though they were constructively in their possession, then they cannot be found guilty. But while a common carrier is obliged to receive all goods offered him for transportation, he is not obliged to receive into his possession such goods as the law forbids him to receive into his possession. He is not obliged to receive short lobsters for transportation, because the law prohibits the possession of them for any purpose. But, gentlemen, I will go a little further, and I instruct you that if a common carrier receives into his possession for transportation or otherwise, lobsters, that is, if he receives barrels which he knows contain lobsters, then he is bound in law to know whether those lobsters are longer or shorter than ten and one-half inches, measured according to the statute ; and if any such lobsters as a matter of fact are less than ten and one-half inches in length, then short lobsters are in his possession within the meaning of the law and he would be guilty of violating this statute.

"Now you apply these principles of law to the testimony in this case, taking up each one of these respondents. If the respondent Swett knew when he sent his team to Commercial wharf that it was to receive twelve barrels of lobsters, and as matter of fact it did receive twelve barrels of lobsters, then he was bound to know whether those lobsters were shorter than prescribed by the statute which I have read; he is bound to know it in law, and if any of those lobsters were less than ten and one-half inches in length, measured according to the statute, they were in his possession and you would be justified in finding a verdict against him. But if you have a reasonable doubt as to any of these facts he is entitled to the benefit of it and must be acquitted."

We are of the opinion that the law is not so exacting as these rulings would make it, and we feel clear that, if the respondents neither knew nor had good reason to believe that the barrels contained short lobsters, they should have been acquitted.

There are in our markets long as well as short lobsters,— legal as well as illegal lobsters. And it must be presumed that the legal constitute the vast bulk of those that are the subject of traffic and transportation. Therefore, it may properly have been presumed by the respondents that the lobsters in question were of the length required by law, there being nothing indicating the contrary. The presumption is that the conduct of men will be in obedience to the requirements of the law when a violation of such law constitutes a criminal offense. Legal lobsters and illegal lobsters are two distinct and independent things.

What inconveniences and risks would men be subjected to who are only in an indirect way connected with commerce in lobsters, or commerce in other articles as well, if the rule given in this case in behalf of the government should prevail. All subordinates in railroad corporations and express companies would be as much punishable for handling freight containing illegal lobsters as their principals would be, including such classes as agents, clerks, cartmen, porters, and employees of every grade and kind. There can be no distinction between

the liabilities of the different classes of men engaged in exercising a control over the property. In fact, subordinates would be the persons usually to be caught in the net of the law. If a carrier who knows that packages delivered to him contain lobsters, not knowing whether they are long or short lobsters, transports them at his personal peril, his business will be profitless and hazardous as far as that kind of carriage is concerned. In such case the freight must be overhauled and examined, entailing a delay and consequently an injury to such perishable property. How long would it probably have taken the employees of this express company to measure these nineteen hundred and twenty-four lobsters, "by taking the length of the back of the lobster, measured from the bone of the nose to the end of the bone of the middle flipper of the tail, the length to be taken with the lobster extended on its back its natural length?"

How much more reasonable would it be to relieve carriers of such extreme impositions, as long as they are not conniving with law-breakers, and to leave the work of discovering such infractions of the laws to fish and game wardens and other official detectives. The judge in his charge in this case said: "It is true as claimed by the attorney for the respondent, that if a package is offered to a carrier for transportation, he is not compelled by law to break open the package for the purpose of ascertaining whether or not it contains contraband goods. A law requiring such strictness of examination would be an interference with the rights of shippers that would not be tolerated." Why do not these remarks apply here exactly? Why is not this a case where the argument of intolerable inconvenience applies as forcibly as in any other? The aim of the law is to attain only reasonable and practical results in all matters where public interests are concerned. If the respondents did not know or have reason to believe that the packages contained short lobsters, they were not under any obligation to explore and hunt as a detective would, to see if they might not perchance obtain such knowledge. Their possession was excusable at least.

An appeal in behalf of the government is made to the doctrine of the courts that for some statutory offenses a person may be held even though he be ignorant of the facts which constituted his offense. That principle is applied only in minor offenses upon some ground of public policy for the protection of society against abuses which cannot be prevented under any more liberal rule. But public policy requires the application of no such rigorous rule here, where an express carrier and his cartman could each be punished, if punished at all, in the sum of $1924 for having in possession for from five to fifteen minutes a property for the carriage of which the company would have received the sum of only six dollars. We do not think that the facts of the case present a very meritorious complaint against the respondents in any view of the law.

. The authorities on this question are few, for the reason that hitherto extreme notions on the subject have not prevailed. The case of *Bennett* v. *American Express Co.*, 83 Maine, 236, is certainly in the direct line of the doctrine which we adopt in the present case. ' In the *Nitro-Glycerine Case*, 15 Wall. 524, it was held that no liability rests on a common carrier for injuries caused by dangerous explosives loaded on his ship, neither he nor his agent knowing or having reasonable cause to believe that the materials were hazardous merchandise. In the opinion the pending question is quite elaborately discussed on authority and principle. The doctrine of that case was followed in *State* v. *Goss*, 59 Vermont, 266, where the agent of an express company was complained of for selling intoxicating liquors, because he received packages of liquors and delivered them and received money therefor for the shipper, the sale taking place at the date of such delivery. The court decided that the respondent could not be held unless he knew or had good reason to believe that the packages delivered by him contained intoxicating liquors. And the court in closing its discussion in that case, says : "If, then, in the absence of suspicious appearances and circumstances, an express carrier is neither bound to know nor authorized to find out, as a condition of receiving it,

what a package contains that is offered him for carriage, it would be strange to hold him guilty of a criminal offense because of the character of its contents ; for in such case he is bound to carry, and is liable if he does not; and the law will not compel a man to act, and then punish him for acting."

*Exceptions sustained.*